UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE
FARM FIRE AND CASUALTY COMPANY

               Plaintiffs,

      -against-

A TO Z MEDICAL CARE P.C.;
ROCKAWAY COMPLETE CHIROPRACTIC
P.C.; YU LONG ACUPUNCTURE P.C.;
GOOD POINT ACUPUNCTURE P.C.; MARC
R. HILAIRE, M.D.; CHARLES M. HIGUERA,
D.C.; AND KUANG YU ZHENG, L.Ac.,

              Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION
17 CV 4443 (RJD)(RML)

*6/7/19*
*Without objection,*
*adopted without qualification*
*as order.*

s/ Raymond J. Dearie

LEVY, United States Magistrate Judge:

      Plaintiffs State Farm Mutual Automobile Insurance Company and State Farm Fire

and Casualty Company (collectively, "plaintiffs" or "State Farm") commenced this action on

July 27, 2017, asserting claims against seven defendants arising out of a fraudulent insurance

scheme. On November 9, 2018, plaintiffs moved for a default judgment against defendants Yu

Long Acupuncture P.C. ("Yu Long"), Good Point Acupuncture P.C. ("Good Point"), and Kuang

Yu Zheng, L.Ac. ("Zheng") (collectively, the "defaulting defendants"). By order dated

November 16, 2018, the Honorable Raymond J. Dearie, United States District Judge, referred

plaintiffs' motion to me for a report and recommendation. For the reasons stated below, I

respectfully recommend that plaintiffs' motion be granted and that the court enter a judgment for

liability and damages against each defendant as set forth below.

Case 1:17-cv-04443-RJD-RML    Document 54    Filed 05/10/19    Page 2 of 15 PageID #: 863

BACKGROUND AND FACTS

Plaintiffs allege that the defaulting defendants engaged in a large-scale insurance fraud scheme, in which they submitted to State Farm hundreds of no-fault insurance bills through Yu Long and Good Point (the "defaulting PC defendants") for medical procedures which were not medically necessary or not performed at all. (See Complaint, dated July 27, 2017 ("Compl."), Dkt. No. 1, ¶¶ 1-8; Declaration of Matthew R. DiBlasi, Esq., dated Feb. 1, 2019 ("DiBlasi Decl."), Dkt. No. 49, ¶ 10.) Plaintiffs claim that the defaulting defendants exploited New York's "no-fault" automobile insurance laws by submitting fraudulent no-fault billing for acupuncture treatments allegedly provided to individuals involved in New York automobile accidents. (See Compl. ¶¶ 20-38.) State Farm, which issues automobile insurance policies in New York (id. ¶¶ 11-12), is obligated under New York's "no-fault" automobile insurance laws and implementing regulations to provide personal injury benefits to insureds for necessary expenses in amounts of up to $50,000 per person. See N.Y. INS. LAW §§ 5101-5109; 11 N.Y.C.R.R. §§ 65-1.1 through 65-5.5. Insureds may assign their no-fault benefits to healthcare providers in exchange for healthcare services, allowing the provider to receive payment directly from the insurance company. See 11 N.Y.C.R.R. § 65-3.11(a).

The defaulting defendants are alleged to have operated out of a medical facility located at 92-05 Rockaway Boulevard in Queens, New York, which was shared with the other defendants in this case. (Compl. ¶ 2.) As set forth in the complaint, plaintiffs allege that defendants worked together as part of a coordinated scheme to diagnose and treat patients pursuant to a fraudulent predetermined treatment plan (the "Predetermined Treatment Plan"), which was designed not for the purpose of legitimate diagnosis and treatment, but rather to enrich defendants by exploiting patients' no-fault benefits. (Id. ¶ 3.) According to the

complaint, patients who were treated at defendants' facility would undergo separate initial examinations by A to Z Medical Care P.C., Rockaway Complete Chiropractic P.C., and either Yu Long or Good Point. (Id. ¶ 36.) These examinations would be conducted within days of each other, or on the same day, and at the same location. (Id.) Through these examinations, defendants would diagnose patients with conditions that varied little from patient to patient, regardless of age, medical history, subjective complaint, or the purported findings of the examination. (Id.) Defendants would then prescribe the same, or substantially the same, treatments for most patients and submit bills for those treatments to State Farm for reimbursement. (Id.)

Yu Long and Good Point, both owned by Zheng, are alleged to have participated in the scheme through the provision of fraudulent acupuncture treatments. (See id. ¶¶ 99-109.) According to the complaint, Yu Long's and Good Point's treatments were not legitimate acupuncture treatments. (Id. ¶ 107.) Whereas a legitimate acupuncture treatment would be carried out pursuant an individualized treatment plan, taking into account each patient's condition and unique energy flow, the treatments carried out by Yu Long and Good Point were done in an "assembly line fashion" [1] that bore little, if any, relation to the individual patient's

---

[1] Plaintiffs allege "pervasive patterns" in Yu Long's and Good Point's treatment practices, for example: (a) their initial examination reports were form documents with check boxes or circled fields, and contained little narration; (b) almost every patient was reported as complaining of neck and back pain; (c) they did not document a diagnosis, prognosis, or causation for patients in connection with their initial examination; (d) they prescribed the same treatment plan for most patients, to take place over an indefinite period of time; (e) they overstated the acupuncture treatments provided; (f) at the interval examinations within each treatment, they almost invariably recommended the continuation of the treatment, even where patients reported little relief from their pain; (g) they inserted needles into only a small range of common acupuncture points, and areas of chief complaint were frequently not addressed; and (h) distal acupuncture points (points which are distant from the affected area) were rarely used, even though they were

(Continued . . . )

Case 1:17-cv-04443-RJD-RML   Document 54   Filed 05/10/19   Page 4 of 15 PageID #: 865

condition and did not effectively treat or otherwise benefit the patient. (See id. ¶¶ 101-108.)

Thus, plaintiffs allege that these treatments were not medically necessary, but rather served to

enrich the defaulting defendants. (Id. ¶ 107.)

Plaintiffs assert state law claims against each of the defaulting defendants for

common law fraud and unjust enrichment.[2] (See id. ¶¶ 118-123, 146-156; DiBlasi Decl. ¶ 8.)

They allege that State Farm has paid $251,410.80 in reliance on fraudulent billing that the

defaulting defendants have submitted or caused to be submitted to State Farm for reimbursement.

(See DiBlasi Decl. ¶ 19; Declaration of Susan McKenna, dated Jan. 31, 2019 ("McKenna

Decl."), Dkt. No. 49-5, ¶ 6.) Plaintiffs also allege that the defaulting defendants have submitted

bills for reimbursement to State Farm which State Farm has not yet paid. (Compl. ¶¶ 157-160.)

Thus, they additionally request a declaratory judgment that they are not obligated to pay the

outstanding claims. (Id.; DiBlasi Decl. ¶ 8.)

DISCUSSION

I.  **Liability**

A.  Default Judgment

The defaulting defendants answered the complaint on September 19, 2017. (See

Answer of Good Point Acupuncture P.C., Yu Long Acupuncture P.C., and Kuang Yu Zheng,

L.Ac., dated Sept. 17, 2017, Dkt. No. 23.) Since then, the defaulting defendants have not

---

routinely included in patients' treatment plans and are generally included as part a legitimate
acupuncture treatment. (See Compl. ¶¶ 102, 108.)

[2] The court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. Plaintiffs are
each alleged to be incorporated, and to have their principal place of business, in Illinois. (See
Compl. ¶¶ 11-12.) The corporate defendants are each alleged to be incorporated, and to have
their principal place of business, in New York. (See id. ¶¶ 13, 15, 17-18.) The individual
defendants are each alleged to be residents of New York. (Id. ¶ 14, 16, 19.) More than $75,000
is in controversy. (See id. ¶ 123.)

participated in discovery or defended this action, despite a court order directing them to appear

or face a possible default judgment. (See DiBlasi Decl. ¶ 5; Minute Entry, dated June 28, 2018

("The acupuncture defendants have not responded to discovery requests. Kuangyu Zheng shall

appear with his attorney, Charles Horn, at a conference to be held on July 19, 2018 at 11:00 . . . .

Failure to appear may result in sanctions, including a possible default judgment.").)  On October

11, 2018, I granted plaintiffs' request to move for entry of default against the three defaulting

defendants.[3]  (See Order, dated Oct. 11, 2018.)  The Clerk of the Court entered a default against

those defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on October 30,

2018.  (See Clerk's Entry of Default, dated Oct. 30, 2018, Dkt. No. 39.)

It is well settled that, upon default, a defendant is deemed to have admitted all of

the well-pleaded allegations in the complaint pertaining to liability. Cotton v. Slone, 4 F.3d 176,

181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158

(2d Cir. 1992). "The issue remains, however, whether plaintiff[s'] well-pleaded allegations in

the complaint, if accepted as true, establish liability for all of the claims plaintiffs raise against

defendants." Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611, 2012 WL

1427796, at *4 (E.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 2012 WL 1432213

(E.D.N.Y. Apr. 25, 2012) (citations omitted).  I will address each of plaintiffs' claims in turn.

B. Common Law Fraud

"Under New York law, for . . . plaintiff[s] to prevail on a claim of fraud, [they]

must prove five elements by clear and convincing evidence: (1) a material misrepresentation or

omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4)

---

[3] At that time, I also granted a motion by Charles Horn, Esq. to withdraw as counsel for the
defaulting defendants. (See Order, dated Oct. 11, 2018.)

5

reasonable reliance on the part of the plaintiff[s], (5) that causes damage to the plaintiff[s]."

Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997). "Where multiple

defendants are alleged to have committed fraud, the complaint must specifically allege the fraud

perpetrated by each defendant." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citation

omitted). Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that a party

alleging fraud "state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P.

9(b). To plead fraud with particularity, the complaint must "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent." Gov't Emps. Ins.

Co. v. Parkway Med. Care, P.C., No. 15 CV 3670, 2017 WL 1133282, at *7 (E.D.N.Y. Feb. 21,

2017) (quotations omitted), report and recommendation adopted, 2017 WL 1131901 (E.D.N.Y.

Mar. 24, 2017). "Plaintiffs need to allege only a general knowledge of the misrepresentation or

omission and intent to defraud, but they must allege enough facts to give rise to a strong

inference that the defendants had the requisite intent to defraud." Gov't Emps. Ins. Co. v.

Spectrum Neurology Grp., LLC, No. 14 CV 5277, 2016 WL 11395017, at *3 (E.D.N.Y. Feb. 17,

2016), adopted sub nom., Gov't Emps. Ins. Co. v. Premier Prof'l Servs., LLC, 2016 WL

1071099 (E.D.N.Y. Mar. 18, 2016). "This requirement may be satisfied by alleging facts that

show that defendants had both motive and opportunity to commit fraud, or by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

(quotations omitted).

Plaintiffs allege, in detail and with specificity, that the defaulting defendants not

only knew they were submitting fraudulent claims for acupuncture treatment to State Farm, but

that they did so intentionally as part of a calculated scheme to profit from the payment of claims,

and that they actively misrepresented and concealed information in an effort to prevent State Farm from discovering that the claims were fraudulent. (Compl. ¶¶ 20-38, 99-117.) "These facts give rise to a strong inference of fraudulent intent, and are thus sufficient to establish the scienter requirement." Infinity Health Prods., Ltd., 2012 WL 1427796, at *5 (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)); see also Gov't Emps. Ins. Co. v. Gateva, No. 12 CV 4236, 2014 WL 1330846, at *6 (E.D.N.Y. Mar. 30, 2014).

Moreover, plaintiffs sufficiently allege reasonable reliance by explaining State Farm's duties under the no-fault laws, and by claiming that State Farm made payments in reliance on the fact that the bills appeared, on their face, to have been submitted in accordance with the law. (Compl. ¶ 116 ("The facially-valid documents submitted to State Farm Mutual and State Farm Fire in support of the charges at issue, combined with the material misrepresentations and misconduct described above, were designed to and did cause State Farm Mutual and State Farm Fire to rely upon them."); see id. ¶¶ 20-23, 112-117.) Plaintiffs have established that they were damaged by the misrepresentations by asserting that they have paid $251,410.80 for fraudulent claims submitted by the defaulting defendants. (DiBlasi Decl. ¶ 19.)

"These particularities are more than sufficient to show that each . . . defendant is liable for fraud." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6 (citing AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005)); see also Gov't Emps. Ins. Co. v. Jacques, No. 14 CV 5299, 2017 WL 9487191, at *7 (E.D.N.Y. Feb. 13, 2017), report and recommendation adopted, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017) (collecting cases). Therefore, I respectfully recommend that the defaulting defendants be found liable for common law fraud.

C. Unjust Enrichment

For plaintiffs to prevail on a claim of unjust enrichment under New York law, they "must establish (1) that the defendant[s] w[ere] enriched; (2) that the enrichment was at the plaintiff[s'] expense; and (3) that the circumstances are such that in equity and good conscience the defendant[s] should return the money . . . to the plaintiff[s]." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 519 (2d Cir. 2001) (citing Universal City Studios, Inc. v. Nintendo Co., 797 F.2d 70, 79 (2d Cir. 1986)). See also AIU Ins. Co., 2005 WL 3710370, at *5-6.

Plaintiffs have adequately alleged that each of the defaulting defendants benefitted at plaintiffs' expense because they received payouts on claims to State Farm for acupuncture services that were inflated, exaggerated, fabricated, or fraudulent. (See Compl. ¶¶ 99-117.) Plaintiffs have demonstrated that the defaulting defendants participated in an elaborate, large-scale plan designed to "siphon money out of a statutory scheme designed for the public good" and that "equity and good conscience require restitution." Infinity Health Prods., Ltd., 2012 WL 1427796, at *6. Therefore, I respectfully recommend that the defaulting defendants be held liable for unjust enrichment.

**II. Damages**

"While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible to mathematical computation." John Hancock Life Ins. Co. v. Perchikov, No. 04 CV 98, 2010 WL 185007, at *3 (E.D.N.Y. Jan. 15, 2010) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Where, as here, the defendants have never appeared, "the Court's determination is based solely on plaintiff[s'] submissions." Gilbert v. Hotline Delivery, No. 00 CV 160, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001).

8

A. <u>Compensatory Damages</u>

In support of their motion, plaintiffs submit the declarations of Matthew R. DiBlasi, an attorney representing State Farm (<u>see</u> DiBlasi Decl.), and Susan McKenna, a Claims Team Manager at State Farm (<u>see</u> McKenna Decl.). Ms. McKenna provides a summary chart which lists the claim number, dates of service, bill receipt date, payment date, check number, amount paid, and amount billed for each claim submitted to State Farm through the defaulting PC defendants. (<u>See</u> McKenna Decl., Ex. 1.) Courts have found this type of documentary evidence adequate to award damages in similar insurance fraud default cases. <u>See Allstate Ins. Co. v. Howell</u>, No. 09 CV 4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013); <u>Allstate Ins. Co. v. Smirnov</u>, No. 12 CV 1246, 2013 WL 5407224, at *15 (E.D.N.Y. Aug. 21, 2013). Hence, plaintiffs' documentation is sufficient.

Plaintiffs request that the defaulting defendants be held jointly and severally liable for State Farm's damages. (Compl. ¶¶ 151, 156.) New York law provides for joint and several liability where the defendants acted jointly or concurrently to produce a single injury. <u>Jacques</u>, 2017 WL 9487191, at *14. Joint and several liability may also be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is "indivisible." <u>Id.</u> (quoting <u>Infinity Health Prods., Ltd.</u>, 2012 WL 1427796, at *11.)

According to the complaint, Yu Long was incorporated by Zheng in October 2012, and operated from February 2014 through April 2015. (Compl. ¶ 17.) Good Point was incorporated by Zheng in July 2014, and operated at the same location from April 2015 until at least July 2017, the time the complaint was filed in this case. (<u>See id.</u> ¶ 18.) Thus, Yu Long and Good Point operated successively rather than concurrently. Moreover, plaintiffs do not plead facts that would support a finding that Yu Long and Good Point worked jointly with one another

9

to carry out the fraudulent scheme, and the damages are easily divisible.[4] Thus, while plaintiffs successfully allege that Zheng is jointly and severally liable for the damages attributed to each defaulting PC defendant, they have not successfully alleged that Yu Long and Good Point are jointly and severally liable for the damages attributed to one another.[5] See, e.g., Jacques, 2017 WL 9487191, at *14-15 (holding individual defendant jointly and severally liable for the damages attributed to the PC defendants that he owned, but declining to hold the PC defendants jointly and severally liable with one another because plaintiffs had failed to establish that they worked jointly with one another); Spectrum Neurology Grp., LLC, 2016 WL 11395017, at *6-7 (E.D.N.Y. Feb. 17, 2016) (declining to hold PC defendants jointly and severally liable with one another, even though they "were at certain times controlled by the same parties," because "plaintiffs [had] not described any specific agreement between [them] or alleged any facts demonstrating that their fraudulent activities were committed in tandem."); Allstate Ins. Co. v. Nazarov, 11 CV 6187, 2015 WL 5774459, at *18 (E.D.N.Y. Sept. 30, 2015) (declining to hold PC defendants jointly and severally liable with one another, even though they were controlled by the same individual, where they each submitted their own fraudulent billing).

Thus, I respectfully recommend that the defaulting PC defendants be held liable for damages as follows:

---

[4] Plaintiffs provide the amount of damages attributed to each defaulting PC defendant in their submission. (See McKenna Decl., Ex. 1.)

[5] New York law permits a successor corporation to be held liable for violations of law committed by its predecessor under limited circumstances. See Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45-46 (2d Cir. 2003). However, plaintiffs do not plead successor liability in the complaint; nor do they plead facts that would support a finding that it applies in this case. Therefore, the court treats the damages attributed to each defaulting PC defendant separately.

| PC Defendant | Amount |
|---|---|
| Yu Long | $36,013.67 |
| Good Point | $215,397.13 |

(See McKenna Decl., Ex. 1.)  I further recommend that Zheng be held jointly and severally liable for the damages attributed to Yu Long and Good Point.  See Jacques, 2017 WL 9487191, at *14.

B.  Pre-Judgment Interest

New York law provides for the award of pre-judgment interest on damages for fraud, computed from the "earliest ascertainable date the cause of action existed" at the non-compoundable rate of nine percent (9%) per annum.  N.Y. C.P.L.R. §§ 5001(a), 5004.  "In the context of insurance fraud, prejudgment interest accrues from the date the insurance company makes payment."  Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12 CV 4295, 2013 WL 5131057, at *9 (E.D.N.Y. Sept. 12, 2013) (citation and internal quotation marks omitted).

Plaintiffs request that the pre-judgment interest be computed from the first day of the year following the payment of each individual fraudulent claim to the defaulting defendants. (DiBlasi Decl. ¶ 21.)  This methodology has been followed in this district in other no-fault insurance fraud cases awarding damages on default.  See, e.g., Jacques, 2017 WL 9487191, at *16; AMD Chiropractic, 2013 WL 5131057, at *9.  In support of their request for pre-judgment interest, plaintiffs provide Mr. DiBlasi's and Ms. McKenna's sworn declarations, and an accompanying chart calculating the interest in accordance with statutory requirements.  (See DiBlasi Decl.; McKenna Decl., Ex. 1.)

According to the chart plaintiffs submit in support of their interest application, plaintiffs paid Yu Long $4,287.31 in no fault-claims reimbursements in the year 2014 and

11

$31,726.36 in the year 2015. Using plaintiffs' preferred method of calculation, Yu Long owes plaintiffs $10,649.75 in pre-judgment interest through and including February 28, 2019. (Id.) Plaintiffs are also entitled to per diem interest from March 1, 2019 to the date of final entry of judgment. The per diem is calculated by multiplying the daily interest rate by the principal. Accordingly, beginning on March 1, 2019, the pre-judgment interest that Yu Long owes to plaintiffs will continue to accrue at a rate of $8.88 per day.[6]

Plaintiffs paid Good Point $73,499.92 in no fault-claims reimbursements in the year 2015; $140,147.37 in the year 2016; and $1,749.84 in the year 2017. Using plaintiffs' preferred method of calculation, Good Point owes plaintiffs $48,459.95 in pre-judgment interest through and including February 28, 2019. Additionally, beginning on March 1, 2019, the pre-judgment interest that Good Point owes plaintiffs will continue to accrue at a rate of $53.11 per day ($215,397.13 multiplied by the daily interest rate).

Finally, I respectfully recommend that Zheng be held jointly and severally liable for the pre-judgment interest assessed against Yu Long and Good Point. Chubb & Son Inc. v. Kelleher, No. 92 CV 4484, at *8 (E.D.N.Y. Oct. 22, 2010), report and recommendation adopted, 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011) ("Under New York law, awarding pre-judgment interest on damages awarded for fraud is mandatory.").

### III. Declaratory Judgment

Plaintiffs seek a declaratory judgment against the defaulting defendants due to the fraudulent scheme and misrepresentations perpetuated by these defendants. A court may exercise its discretion to issue a declaratory judgment where the party seeking it demonstrates the

---

[6] The daily interest rate is calculated by dividing the annual interest rate by the days in the year. In this case that calculation is: .09 / 365 = .00024658. The principal for this calculation is the amount paid by State Farm to Yu Long ($36,013.67).

existence of an actual case or controversy. <u>See</u> 28 U.S.C. § 2201(a); <u>Infinity Health Prods., Ltd.,</u> 2012 WL 1427796, at *4. "Declaratory relief is appropriate '(i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" <u>Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,</u> 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (quoting <u>Md. Cas. Co. v. Rosen,</u> 445 F.2d 1012, 1014 (2d Cir. 1971)). "Courts within this district have, on numerous occasions, found these requirements met in actions by insurers seeking declaratory judgments regarding obligations relating to allegedly fraudulent claims." <u>Infinity Health Prods., Ltd.,</u> 2012 WL 1427796, at *4 (citation omitted).

Plaintiffs have established an actual controversy where a declaratory judgment would afford specific relief and clarify their legal obligations as to pending claims. As discussed above, plaintiffs allege that the defaulting PC defendants submitted $251,410.80 in fraudulent claims that State Farm has already paid out. (<u>See</u> DiBlasi Decl. ¶ 19; McKenna Decl. ¶ 6.) Plaintiffs additionally allege that the defaulting PC defendants have submitted bills for fraudulent claims that plaintiffs have not yet paid out.[7] (<u>See</u> Compl. ¶ 158.) The complaint alleges, with particularity as to each of the defaulting defendants, that these pending claims are fraudulent because they were submitted pursuant to defendants' Predetermined Treatment Plan. (<u>See id.</u> ¶¶ 24-37, 99-117.) Plaintiffs allege that the Predetermined Treatment Plan was designed not for the purpose of legitimate diagnosis and treatment, but rather to enrich defendants by exploiting patients' no-fault benefits. (<u>Id.</u> ¶ 3.) Plaintiffs further allege that the treatments prescribed

---

[7] Plaintiff do not provide information as to the value of the unpaid fraudulent bills.

pursuant to the Predetermined Treatment Plan were not medically necessary, or not performed at all, and did not effectively treat or otherwise benefit the patients. (Id. ¶¶ 5, 107.)

The claims submitted pursuant to the Predetermined Treatment Plan are all fraudulent claims under the no-fault statutory scheme. See Infinity Health Prods., Ltd., 2012 WL 1427796, at *4 n.2 (citing AIU Ins. Co., 2005 WL 3710370, at *2-4, 14) (noting that no-fault laws provide that knowingly filing a claim containing materially false or misleading information is a crime); N.Y. INS. LAW § 403(d). Plaintiffs thus have established their entitlement to a declaratory judgment. Therefore, I respectfully recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding fraudulent claims submitted by the defaulting PC defendants.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for a default judgment be granted and that defendants Yu Long Acupuncture P.C., Good Point Acupuncture P.C., and Kuang Yu Zheng, L.Ac. be held liable for common law fraud and unjust enrichment. I further recommend that damages be awarded as follows:

(1) Yu Long Acupuncture P.C. and Kuang Yu Zheng, L.Ac. be held jointly and severally liable for $36,013.67 in compensatory damages and $10,649.75 in pre-judgment interest, plus $8.88 per day from March 1, 2019 through the date of entry of judgment.

(2) Good Point Acupuncture P.C. and Kuang Yu Zheng, L.Ac. be held jointly and severally liable for $215,397.13 in compensatory damages and $48,459.95 in pre-judgment interest, plus $53.11 per day from March 1, 2019 through the date of entry of judgment.

14

I also recommend that this court enter a declaratory judgment that plaintiffs are not obligated to pay the outstanding claims submitted by the defaulting defendants.

Plaintiffs are directed to serve a copy of this report and recommendation on each defaulting defendant by first-class mail and to electronically file proof of service with the court within three (3) days. Any objections to this report and recommendation must be filed with the Clerk of Court, with courtesy copies to Judge Dearie and to my chambers, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        May 10, 2019